IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT IN
AND FOR SEMINOLE COUNTY,
FLORIDA

MARC IRWIN SHARFMAN, M.D., P.A., individually and on behalf of all others similarly situated,

  Plaintiff,

v.

SITERX, INC., a Delaware corporation,

  Defendant.

_____/

Case No.: **2021CA002893**

CLASS REPRESENTATION

## CLASS ACTION COMPLAINT

MARC IRWIN SHARFMAN, M.D., P.A. ("Plaintiff"), brings this action individually and on behalf of all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendant, SITERX, INC. ("Defendant").

## PRELIMINARY STATEMENT

1.  This case challenges Defendant's practice of faxing unsolicited advertisements in violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

2.  The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 USC § 227 (hereafter "TCPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from faxing or having an agent

fax advertisements without the recipient's prior express invitation or permission. The TCPA provides a private right of action with statutory damages of $500 per violation.

3. On or about July 23, 2021, Defendant sent Plaintiff an unsolicited fax advertisement in violation of the TCPA ("the Fax"), a true and correct copy of which is attached hereto as <u>Exhibit A</u> and made a part hereof. Upon information and belief, Defendant sent the Fax and other facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the TCPA. The Fax described the commercial availability and/or quality of Defendant's property, goods or services, namely, Defendant's specialized software to identify patient-trial matches, for which a doctor is reimbursed $200 for each review. (Exhibit A).

4. Plaintiff alleges on information and belief that Defendant has sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the TCPA, including but not limited to the advertisements sent to Plaintiff.

5. Unsolicited fax advertisements, including those sent by Defendant in this case, damage their recipients. The recipients of these unsolicited fax advertisement lose the use of their fax machine, paper, and ink toner.  Unsolicited fax advertisements waste the recipient's valuable time that would have been spent on something else. Unsolicited fax advertisements intrude into the recipient's seclusion, violate the recipient's right to privacy, occupy fax lines, and prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require time and additional labor to attempt to discern the source and purpose of the unsolicited message.

6 On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the TCPA. Plaintiff seeks to certify a class which was sent the Fax or other faxes without prior express invitation or permission and without

2

compliant opt-out language (to the extent an established business relationship ("EBR") exists). Plaintiff seeks statutory damages for each violation of the TCPA and injunctive relief.

7. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely, liability under the TCPA. This action seeks relief expressly authorized by the TCPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event willfulness in violating the TCPA is shown.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 47 U.S.C. § 227 and Florida Statutes § 26.012, in that this class action seeks recovery of damages in excess of $15,000.00, exclusive of interests and costs, and Defendant has transacted business in Florida and committed tortious acts related to the matters complained of herein in Florida.

9. Venue is proper in Seminole County pursuant to Florida Statutes § 47.051 in that the cause of action occurred in this county and Plaintiff has its principal place of business in this county.

## PARTIES

10. Plaintiff, MARC IRWIN SHARFMAN, M.D., P.A., is a Florida professional association, with its principal place of business in Longwood, Florida.

11. On information and belief, Defendant, SITERX, INC., is and was at all relevant times, a Delaware corporation with its Headquarters in New York, New York.

12. Defendant's website, www.siterx.com/about, last visited December 7, 2021, states the following:

"SiteRx is on a mission to bridge clinical trials with clinical practice, making access to appropriate clinical trials available to any patient that qualifies and wishes to participate. By accomplishing this, we give treating physicians an opportunity to provide additional care options for their patients while generating significant new income for their practices. We also improve things dramatically for sponsors and sites who consistently struggle to recruit the right patients, wasting precious time and money, and delaying the approval of potentially life-saving treatments."

## FACTUAL ALLEGATIONS

13. On or about July 23, 2021, Defendant sent an unsolicited facsimile commercial advertisement to Plaintiff using a telephone facsimile machine, computer or other device. A copy of the facsimile is attached hereto as Exhibit A.

14. The July 23, 2021 Fax states, in part, as follows:

"Ive called your office several times but have no luck in reaching you.  I want you to know about this very important program we have to offer your patients.

We work with MD and DO designated doctors that practice independently and want an easy way to access local clinical trials for their patients….

We reimburse doctors for their time and efforts; we have doctors that add over 6 figures to their income working with us…"

"How it works is simple.

"We have you use our specialized software with your EHR, the software identifies patient-trial matches, and hen we give you a weekly report of those matches for your review.

Reimbursement is $200 for each review regardless of whether you approve the patient for a rial, with additional reimbursement for any patients, you approve that enter a trial…"

*Exhibit A.*

4

15. The Fax advertises the commercial availability of Defendant's specialized software to identify patient-trial matches, for which a doctor is reimbursed $200 for each review. (Ex. A).

16. Defendant created or made Exhibit A, or directed and paid a third party to do so, and Exhibit A was sent by or on behalf of Defendant with Defendant's full knowledge and authorization.

17. Defendant receives some or all of the revenues generated from the sale of the products or services advertised on Exhibit A, and Defendant profits and benefits from the sale of said products or services advertised on Exhibit A.

18. Plaintiff did not give Defendant "prior express invitation or permission" to send fax advertisements to it.

19. On information and belief, Defendant faxed or caused to be faxed to at least fifty recipients' telephone facsimile machines the same and/or other unsolicited facsimiles without prior express invitation or permission, and without the compliant opt-out language as required by 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4), thereby precluding Defendant from successfully invoking the affirmative defense of established business relationship.

20. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving illegal faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

21. Defendant's facsimile attached as Exhibit A does not display a proper opt-out notice as required by 47 C.F.R. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4), in fact, it contains no opt-out whatsoever.

22. Defendant's unsolicited fax advertisement used the paper, toner and fax machine of Plaintiff and class members, and which they had not authorized Defendant to use, thereby causing damages to Plaintiff and class members.

## CLASS REPRESENTATION ALLEGATIONS

23. In accordance with Fla. R. Civ. P. 1.220, Plaintiff brings this action as a class action on behalf of the following Class of persons:

> All persons who (1) on or after four years prior to the filing of this action (the "Class Period"), (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant, (3) from whom Defendant did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendant did not have an established business relationship, or (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4).

Excluded from the Class are Defendant, its employees, agents and members of the Judiciary. Plaintiff seeks to certify a class which includes, but is not limited to, the fax advertisement sent to Plaintiff. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

### Numerosity and Impracticability of Joinder – Rule 1.220(a)(1)

24. Plaintiff is informed and believes in good faith that the class includes fifty or more persons and as such, the members of the Class are so numerous that joinder of all members is impracticable.

### Commonality - Rule 1.220(a)(2)

25. There are questions of fact or law common to the class, which predominate over questions affecting only individual class members, including without limitation:

(i) Whether the Fax(es) and other faxes sent during the class period constitute advertisements under the TCPA and its implementing regulations;

(ii) Whether Defendant meets the definition of "sender" for direct TCPA liability, meaning a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(10);

(iii) Whether Defendant had prior express invitation or permission to send Plaintiff and the class fax advertisements;

(iv) Whether the Fax(es) contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder regarding the affirmative defense of EBR, and the effect of the failure to comply with such requirements;

(v) Whether Defendant should be enjoined from faxing advertisements in the future;

(vi) Whether Plaintiff and the other Class members are entitled to statutory damages;

(vii) Whether Defendant committed the common law tort of conversion;

(vii) Whether Defendant should be enjoined from faxing advertisements in the future; and

(ix) Whether the Court should award trebled damages.

### Typicality

26. Plaintiff's claims are typical of those of the members of the Class. Plaintiff's claims, and those of the other Class members, arise out of the same actions and course of

conduct of Defendant in sending advertisements without prior express permission or invitation and without a proper opt-out notice.

### Adequacy of Representation – Rule 1.220(a)(4)

27.  Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes. Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members. Plaintiff has interests in common with the proposed class members and Plaintiff and Plaintiff's counsel will prosecute the case. Plaintiff has the same claim for damages as the other class members, and Plaintiff and the other class members can recover the same statutory liquidated damages.

### Superiority – Rule 1.220 (b)(3)

28.  A class action is superior and appropriate to other potential methods for fair and efficient adjudications.

29.  The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible and inconsistent adjudications could result.

30.  This action is manageable as a class action.

### COUNT I

### VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

31.  Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

32.  The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited fax advertisement . . ." 47 U.S.C. § 227(b)(1)(C). The TCPA defines "telephone facsimile

machine" as "<u>equipment</u> which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." (Opp. at 20, citing 47 U.S.C. § 227(a)(3)) (emphasis added).

33. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

34. **Opt-Out Notice Requirements.** In order to sustain the affirmative defense of an EBR (established business relationship), the sender must establish (1) that the sender in fact has an EBR with the recipient;[1] (2) that the sender obtained the recipient's fax number through a voluntary communication between the two or through a public source on which the recipient voluntarily made the number available; and (3) that the fax has an opt-out notice that complies with the requirements of the statute and the FCC regulations. 47 U.S.C. § 227(b)(1)(C)(i)–(iii).

35. The corresponding FCC regulations state that an opt-out notice must:

(1) Be clear and conspicuous and on the first page of the advertisement;

(2) State that the recipient may make a request to the sender not to send any future unsolicited advertisements and that failure to comply within 30 days is unlawful;

---

[1] An "established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or the residential subscriber regarding products or services offered by such person or entity, which relationship has not been terminated by either party." 47 C.F.R. § 64.1200(f)(6).

 (3) Set forth the requirements for a request under 47 U.S.C. § 227(b)(2)(E);[2]

 (4) Include a domestic contact telephone and facsimile number for the recipient, and a cost-free mechanism for a recipient to transmit a request; and

 (5) Permit the recipient to make such a request at any time on any day of the week.

47 C.F.R. § 64.1200(a)(4)(iii). The Fax does not contain a compliant opt-out notice, and fails to include any opt-out notice, precluding as a matter of law an EBR defense in this case.

 36. **The Fax**. Defendant sent the Fax on or about July 23, 2021, via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and telephone facsimile machines of Plaintiff, and on information and belief to the telephone facsimiles machines of members of the Plaintiff Class. The Fax constitutes an advertisement under the Act and the regulations implementing the Act. Defendant failed to comply with the Opt-Out Requirements in connection with the Fax. The Fax was transmitted to persons or entities without their prior express invitation or permission and Defendant is precluded from sustaining the established business relationship affirmative defense with Plaintiff and other members of the class because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to Plaintiff and members of the Class. Plaintiff seeks to certify a class which includes this Fax and all other unsolicited fax advertisements sent during the four-year class period without prior express invitation or

---

[2] 47 U.S.C. § 227(b)(2)(E) states that a request not to send future unsolicited advertisements will be binding only if (1) it identifies the telephone number or numbers of the telephone facsimile machine to which the request relates; (2) the request is made to the telephone or facsimile number provided by the sender in the opt-out notice; and (3) the person making the request has not "subsequent to such request" provided express invitation or permission to the sender.

permission and/or (as to those with an established business relationship with Defendant) without a compliant opt-out notice.

37. **Defendant's Other Violations.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class the same or other faxes that constitute advertisements under the TCPA and its implementing regulations that were transmitted to persons or entities without their prior express invitation or permission. Defendant is precluded from sustaining the established business relationship affirmative defense with Plaintiff and other members of the class because of the failure to comply with the Opt-Out Notice Requirements.  By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder.  Plaintiff is informed and believes, and upon such information and belief avers, that Defendant may be continuing to send unsolicited advertisements via facsimile transmission in violation of the TCPA and the regulations promulgated thereunder, and absent intervention b this Court, will do so in the future.

38. The TCPA provides a private right of action to bring this action on behalf of Plaintiff and the Plaintiff Class to redress Defendant's violations of the Act and provides for statutory damages. 47 U.S.C. § 227(b)(3).  The Act also provides that injunctive relief is appropriate. *Id.*

39. The TCPA is a strict liability statute, so Defendant is liable to Plaintiff and the other class members even if its actions were only negligent.

40. Defendant knew or should have known that (a) Plaintiff and the other class members had not given prior express invitation or permission for Defendant or anybody else to

send faxes advertising the commercial availability or quality of Defendant's property, goods, or services;; (b) Defendant transmitted fax advertisements; (c) the Fax does not contain the required Opt-Out Notice, thereby precluding the affirmative defense of established business relationship; and (d) Defendant's transmission of fax advertisements without prior express invitation or permission was unlawful.

41. Defendant's actions injured Plaintiff and the other class members. Receiving Defendant's junk faxes caused Plaintiff and the other recipients to lose paper and toner consumed in the printing of Defendant's faxes. Moreover, Defendant's fax advertisements used Plaintiff's and the other class members' telephone lines and fax machines. Defendant's faxes cost Plaintiff and the other class members time, as Plaintiff and the other class members and their employees wasted their time receiving, reviewing, and routing Defendant's unauthorized faxes. That time otherwise would have been spent on Plaintiff's and the other class members' business or personal activities. Defendant's faxes intruded into Plaintiff's and other class members' seclusion and violated their right to privacy, including their interests in being left alone.

## COUNT II

### CONVERSION

42. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

43. By sending Plaintiff and the other Class members unsolicited faxes, Defendant improperly and unlawfully converted their fax machines, toner, paper, to its own use in order to send unsolicited fax advertisements. Defendant also converted Plaintiff's employees' time to Defendant's own use in discerning that the Fax(es) was in fact a junk-fax.

44. Immediately prior to the sending of the unsolicited fax, Plaintiff and the other Class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

45. By sending the unsolicited fax, Defendant misappropriated and/or occupied the Plaintiff's and other Class members' fax machines, telephone line, toner, paper and employee time to Defendant's own use. Such misappropriation and/or occupation was wrongful and without authorization.

46. Defendant knew or should have known that its misappropriation of fax machines, telephone lines, paper, toner, and employee time was wrongful and without authorization.

47. Plaintiff and the other Class members were deprived of the use of the fax machine, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each Class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendant.

48. Each of Defendant's unsolicited fax advertisements effectively stole Plaintiff's employees' time because multiple persons employed by Plaintiff were involved in receiving, reading, routing, and reviewing Defendant's illegal faxes. Defendant knew or should have known that Defendant's and their employees would have to read the unsolicited fax advertisements in order to determine that said faxes were unsolicited fax advertisements.

49. As a result of the foregoing, Defendant's actions caused damages to Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, MARC IRWIN SHARFMAN, M.D., P.A., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant, SITERX, INC., as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court enter judgment finding Defendant has violated the TCPA and is liable to Plaintiff and the members of the Class for violating the TCPA;

C. That the Court enter judgment finding Defendant unlawfully converted the fax machines of Plaintiff and the members of the Class and is liable to Plaintiff and the members of the Class for damages arising from its conversion;

D. That the Court award statutory liquidated damages in the sum of five hundred dollars ($500.00) for each violation, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing," and an appropriate award of damages for each act of conversion;

E. That the Court enter an injunction prohibiting Defendant from engaging in the statutory violations at issue in this action; and

F. That the Court award pre-judgment interest, costs, including reasonable attorneys' fees, and such further relief as the Court may deem just and proper.

Respectfully submitted,

      MARC IRWIN SHARFMAN, M.D., P.A.,
individually and as the representative of a class of
similarly-situated persons

By: <u>Ryan M. Kelly</u>
Ryan M. Kelly – FL Bar No.: 90110
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  847-368-1500 / Fax: 847-368-1501
Email:  rkelly@andersonwanca.com

15

**EXHIBIT A**

Headache & Neurological Trtmnt
Att: Marc I Sharfman, MD
Longwood, FL 32779

**Ive called your office several times but have no luck in reaching you.  I want you to know about this very important program we have to offer your patients.**

**We work with MD and DO designated doctors that practice independently and want an easy way to access local clinical trials for their patients.**

Currently enrolling studies for: Neurological Illnesses like Alzheimer's and Parkinson's, Dementia, Multiple Sclerosis, Lumbar Disc Herniations

We reimburse doctors for their time and efforts; we have doctors that add over 6 figures to their income working with us.

<u>There are no patient minimums</u>, and <u>you do not need to be the principal investigator.</u>

## How it works is simple

Everything is fully automated for you, no dealing with manual screenings and lengthy submission processes.

We have you use our specialized software with your EHR, the software identifies patient-trial matches, and then we give you a weekly report of those matches for your review.

Reimbursement is $200 for each review regardless of whether you approve the patient for a trial, with additional reimbursement for any patients, you approve that enter a trial

Once a patient is approved by you and they want to get on the trial we have our team get them registered and onboarded

Paul Anderson

Direct Line: 727-999-3119

